UNITED STATES DISTRICT COURT
District of South Dakota
Western Division

| | | |
|---|---|---|
| KENNETH HARRIS, | ) | CIV 22-5012 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S COMPLAINT FOR A CIVIL** |
| | ) | **CASE [Redacted]** |
| UNITED STATES OF AMERICA, | ) | [Federal Tort Claim] |
| | ) | |
| Defendant. | ) | Jury Trial: *NO* |

COMES NOW Plaintiff Kenneth Harris, by and through Timothy J. Rensch, his attorney, and for his Complaint against Defendant United States of America, states and alleges the following:

1.

This action arises under, and is governed by, the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and §§ 2671-2680; the jurisdiction of the federal court is exclusive for Federal Tort Claims actions such as that at present; thus, the threshold "amount at stake" is not applicable.

2.

Jurisdiction and venue of this action is properly with this Court pursuant to 28 U.S.C. § 1402(b) in that Plaintiff Kenneth Harris [Rapid City, South Dakota; hereinafter "Plaintiff Harris"] is a resident of the State of South Dakota, within the District and Division of this Court.

3.

Prior to the commencement of this action, under 28 U.S.C. § 2675 Plaintiff Harris timely and properly submitted his administrative claim to the appropriate federal agency [U.S. Department of Veterans Affairs, Veterans Administration Medical Services, Washington, D.C.],

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

who thereafter did not issue a reply within 180 days after the administrative claim was presented.

4.

By virtue of such lapse of time (the implied final disposition by the federal agency), Plaintiff Harris is entitled to consider the non-response as a "denial" of his claim, and to commence this action.

5.

This action is being commenced after the lapse of 180 days of the implied denial by the federal agency, and thus is timely.

6.

As is more fully set forth below, and within the purview of 28 U.S.C. § 1346(b), the place where the primary wrongful and tortious act(s) or omission(s) occurred which give(s) rise to this action is within the States of Minnesota (the place of the negligent report of the lab result) and/or South Dakota (the place of receipt of the negligent lab report).

7.

Defendant United States of America operates a Veterans Administration Medical Center known as Minneapolis Veterans Administration Health Care System [Minneapolis, MN; hereinafter "Minnesota VAMC"], as well as a Veterans Administration Medical Center at Ft. Meade (South Dakota) [Ft. Meade, SD; hereinafter "Ft. Meade VAMC"] where in operating such facility/facilities, through its doctors and other allied care-providers, employees, and agents, Defendant held itself out to persons eligible to receive laboratory result reviews, analysis or other determination, or care thereat, including but not limited to Plaintiff Harris, to use that degree of

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

care, skill, diligence, and attention used by doctors and other allied care-providers, employees, and agents generally in the medical community in their lab analysis and report, as well as care and treatment of patients.

8.

All of the negligent acts or omissions, or other breaches of duty, care, skill, or diligence described herein, whether at Ft. Meade VAMC or at Minneapolis VAMC, or both, were performed, or omitted to be performed, by persons acting on behalf of Defendant, or in the employment of Defendant, or having such other relation to Defendant as to give rise to liability against Defendant for such negligent acts or omissions, or other breaches of duty, care, skill, or diligence.

9.

All of Plaintiff Harris's injuries, damages, losses or other like or similar adverse consequences complained of were a proximate cause of negligent acts or omissions, or other breaches of duty, care, skill, or diligence of persons acting on behalf of Defendant, or in the employment of Defendant, or having such relation to Defendant as to give rise to liability against Defendant for such negligent acts or omissions, or other breaches of duty, care, skill, or diligence.

10.

Plaintiff Harris was receiving medical care and treatment at or through Ft. Meade VAMC relating to urology issues, under the care of the Urology Clinic thereat, and specifically Dr. Michael Brekhus [hereinafter "Dr. Brekhus"].

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

11.

On October 30, 2020, Plaintiff Harris was seen at Ft. Meade VAMC about ongoing urinary tract symptoms.  Plaintiff Harris had recently returned from an overseas deployment, where he had not experienced urinary tract symptoms, but had them upon his return.

12.

On October 30, 2020, Dr. Brekhus examined Plaintiff Harris and suspected urethral stricture was causing Plaintiff Harris's dysuria.  Dr. Brekhus performed an invasive procedure called a "cystourethroscopy" to evaluate the condition, and most specifically to determine the presence of urethral stictures.  The result was a finding that strictures were present from the fossa navicularis to the distal bulb, with marked dilation of the Gland of Littre along the pendulous portion.  Dr. Brekhus also noted that further testing and treatment would determine if more extensive procedures, such as a complex reconstruction, would be necessary.  Meanwhile, a CITC lab referral was made for mycoplasma and ureaplasma NAA testing.  Plaintiff Harris was told to check back in a month.

13.

Plaintiff Harris's lab specimen was sent to the pathology clinic at the Minneapolis VAMC for laboratory evaluation.

14.

On November 6, 2020, Dr. Deniz Aslan [hereinafter "Dr. Aslan"] issued to Dr. Brekhus a report of the cytology laboratory evaluation, indicating that the test showed "POSITIVE FOR MALIGNANCY."

15.

The "incident" occurred on November 6, 2020—but was fraudulently withheld from Plaintiff Harris, or was otherwise not disclosed to him, while treatment was ongoing—when Dr. Aslan negligently reported a cancerous malignancy "Positive" lab result of Plaintiff Harris's urine specimen drawn on October 30, 2020, when in actuality the result had shown a "Negative" result. This constituted negligence.

16.

At Ft. Meade VAMC, it was negligence for the erroneous laboratory report to not be discovered in prompt fashion.

17.

Dr. Bekhus reviewed the faulty lab report, then called Plaintiff Harris on the phone. Based on the positive cytology, Dr. Brekhus told Plaintiff Harris that the "Positive" result "is an extremely strong indicator that there is cancer somewhere in the lining of the urinary tract." Dr. Brekhus recommended to Plaintiff Harris that he undergo a CT urogram followed by a biopsy. "This would include urethral biopsies, as we as biopsy of the inflamed appearing areas at the bladder neck near the bladder." Dr. Brekhus also indicated that some dilation may be required to allow the biopsies to obtained. "I stressed that the cytology result was a concerning finding."

18.

On November 10, 2020, Plaintiff Harris underwent a CT Urography procedure (with and without contrast) of his pelvis. The part of the lab report labeled "Impression" noted the following: (1) No CT evidence of urothelial mass lesion; (2) No urolithiasis or hydronephrosis;

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

and (3) No evidence of metastatic disease in the abdomen or pelvis. Regarding the CT Urography procedure (with and without contrast) on his abdomen, a radiation dose was part of the procedure.

19.

The part of the lab report labeled "Impression" noted the following: (1) No CT evidence of urothelial mass lesion; (2) No urolithiasis or hydronephrosis; and (3) No evidence of metastatic disease in the abdomen or pelvis.

20.

As a direct result of Defendant's negligence, Plaintiff Harris underwent two separate surgical procedures, both performed under general anesthesia: December 1, 2020 – cystoscopy surgical procedure under general anesthesia to collect biopsies from the urethra to the base of the bladder; and December 8, 2020 – cystoscopy surgical procedure under general anesthesia to collect biopsies from the bladder, as well as uretal washings. Foley catherization, and the subsequent removal of the cather(s) were intrusive parts of these procedures.

21.

Plaintiff Harris had to endure the physical effects of pain and personal inconvenience, and also had to endure constant mental and emotional anguish of believing he had cancer located at a part of his body that was most private. The detrimental impact of the negligently incorrect lab report of what in actuality had been a proper lab test, was devastating to Plaintiff Harris, as well as to his family and friends as to what he had to endure physically and emotionally.

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

22.

At first, Ft. Meade's VAMC Urology Department and/or Dr. Brekhus may have believed they had no reason to question the veracity of the negligent and inaccurate lab test result report, and they acted accordingly with a diagnostic and treatment plan based upon the negligent and inaccurate lab report.

23.

At the same time, certain of the various treatment efforts, and the findings brought forward from them, seemed to question the "Positive" lab test result, and thus they share some causal fault for failing to have the inaccurate "Positive" test result double-checked, or at an earlier period they should have recognized its erroneousness, or the distinct possibility of the laboratory report being in error.

24.

On or about December 11, 2020, Dr. Aslan discovered or otherwise acknowledged his negligent reporting of the October 30 lab test.  Dr. Aslan made a "modification" to Plaintiff Harris's medical records and the November 6, 2020 lab report, in that he changed "POSITIVE FOR MALIGNANCY" to "NEGATIVE FOR MALIGNANCY."  This modification wasn't via an Addendum, but rather in the body of the re-issued report.

25.

In December 2020, Dr. Aslan altered the original record to show a "Negative" lab test result.  Dr. Aslan admitted to Dr. Brekhus that the error had been the result of his [Dr. Aslan's] "cut-and-paste" report of the test result.

26.

Contact was made with Dr. Brekhus about the lab test report error.

27.

Dr. Brekhus telephoned Plaintiff Harris about the lab test report inaccuracy. In this regard, Dr. Brekhus stated in a medical record:

> I contacted the Patient [Plaintiff Harris] today after receiving the cytologic specimen results from recent procedure on 12/8/20. I was contacted by Dr. Aslan, the pathologist at MLPS VA who informed me that the initial cytology was reported as POSITIVE in error. He informed me that there was a "copy and paste" error, and the cytology collected 10/30/20 and reported on 11/6/20 was in fact NEGATIVE. I informed the Patient of the information after calling and discussing the bladder biopsy results with Dr. Herr, the reading pathologist at Clinical Laboratory of BH [Black Hills]. I advised the Patient that we no longer suspect malignancy, and he was relieved of the news. Chief of Staff, Dr. Bowers, was informed of the situation, and I filed a JPSR report. The Patient will follow-up in late Feb. 2021 (per his request) for his urethral stricture disease. He understands to report questions or concerns in the interim. /es/ Michael J. Brekhus, MD.

28.

By certified letter dated December 21, 2020 (received by Plaintiff Harris on December 28, 2020), Dr. Kent Crossley, Chief of Staff at the Minneapolis VAMC, formally notified Plaintiff Harris of the wrongful lab test result. The letter stated:

> As you are aware, your urine cytology from 10/30/2020 was reviewed by a pathologist at the MVAHCS. [¶] A review has identified that you were informed that your urine cytology from 10/30/2020 was positive for malignant cells, and in fact it was not. I understand your urologist Dr. Michael Brekhus has disclosed this error to you clinically on 12/11/2020. . . . [¶] Very truly yours, [¶] /s/ KENT CROSSLEY, MD, Chief of Staff.

Kenneth Harris v. USA/CV  /Plaintiff's Complaint [Redacted]

29.

When the realization hit Plaintiff Harris that the news that he had a malignancy was the product of a negligent laboratory error his relief that he did not have cancer turned sour.  Due to the wrongful diagnosis, Plaintiff Harris had been through a mental and emotional roller coaster ride.  After the negligent analysis report was finally disclosed to him, and the truth of how it happened in the first place, sifted through him, Plaintiff Harris felt disgusted and angry.

30.

In addition, Plaintiff Harris has been caused to endure further emotional upheaval in dealing with the mental and emotional aspects of the inaccurate lab test report, including but not limited to a lack of motivation at home, at work, at school, in his social settings, and so forth. Plaintiff Harris even began smoking again to help deal with the aftermath.

31.

The inaccurate lab report not only caused Plaintiff Harris to suffer mental anguish and emotion distress, it also caused monetary ramifications (i.e., subrogation) for Plaintiff Harris's health insurer, Wellmark BlueCross-BlueShield [Des Moines, Iowa], which paid for treatment billings forwarded to them by the Veterans Administration for Plaintiff Harris's should-have-been-unnecessary medical care.  The total paid by BCBS was reported to Plaintiff Harris as follows:

| *Date of Service* | *Bill Sum* | *Plan Allowance* | *BCBS Paid* | *Harris Charged* |
|---|---|---|---|---|
| 11/10/2020 | $   391.25 | $   140.00 | $   140.00 | $     0.00 |
| 11/10/2020 | $ 1,148.62 | $   666.20 | $   516.20 | $  150.00 |
| 11/20/2020 | $ 1,557.65 | $   903.43 | $   873.43 | $    30.00 |
| 11/20/2020 | $      59.78 | $     17.50 | $     17.50 | $     0.00 |
| 11/20/2020 | $   183.71 | $   136.00 | $   136.00 | $     0.00 |

Kenneth Harris v. USA/CV   /Plaintiff's Complaint [Redacted]

| Date | | | | |
|---|---|---|---|---|
| 12/01/2020 | $ 1,361.41 | $   578.40 | $   578.40 | $     0.00 |
| 12/01/2020 | $    737.29 | $   319.00 | $   119.00 | $  200.00 |
| 12/01/2020 | $ 7,431.96 | $ 4,310.53 | $ 4,310.53 | $     0.00 |
| 12/01/2020 | $    909.63 | $   264.00 | $   264.00 | $     0.00 |
| 12/05/2020 | $    604.41 | $   113.48 | $   113.48 | $     0.00 |
| 12/05/2020 | $ 1,577.94 | $   915.21 | $   790.21 | $  125.00 |
| 12/07/2020 | $    363.67 | $   210.93 | $   210.93 | $     0.00 |
| 12/08/2020 | $ 1,247.96 | $   530.20 | $   530.20 | $     0.00 |
| 12/08/2020 | $    793.55 | $   342.00 | $   142.00 | $  200.00 |
| 12/08/2020 | $     83.98 | $     14.92 | $     14.92 | $     0.00 |
| 12/08/2020 | $ 8,091.45 | $ 4,693.04 | $ 4,693.04 | $     0.00 |
| 12/08/2020 | $ 1,819.26 | $   528.00 | $   528.00 | $     0.00 |
| TOTAL: | **$28,363.52** | **$14,682.84** | **$13,977.84** | **$   705.00*** |

*Out-of-pocket charge was $705.00, but Plaintiff Harris never actually made payment of the same.

32.

Plaintiff Harris lost time from work while attending medical treatment appointments that were a product of the negligent misdiagnosis. At $39.87 per hour of sick leave value, Plaintiff Harris lost 37 hours of work. The monetary value of this loss was ***$1,475.19***:

| Date | Sick Leave (hours) | Dollar value |
|---|---|---|
| 11/30/2020 | 2 | $     79.74 |
| 12/01/2020 | 8 | $   318.96 |
| 12/02/2020 | 8 | $   318.96 |
| 12/03/2020 | 4 | $   159.48 |
| 12/07/2020 | 1 | $     39.87 |
| 12/08/2020 | 8 | $   318.96 |
| 12/10/2020 | 2 | $     79.74 |
| 12/17/2020 | 4 | $   159.48 |
| | 37 | ***$ 1,475.19*** |

33.

The wrongful delay in determining that Plaintiff Harris had been given an inaccurate diagnosis of cancer due to Defendant's negligence, was a proximate cause of its own special

10

Kenneth Harris v. USA/CV  /Plaintiff's Complaint [Redacted]

and/or compensatory damages which were a proximate resulting therefrom, and of which Plaintiff Harris seeks such recovery.

34.

As a proximate result of the negligent acts or omissions, or other breaches of duty, care, skill, or diligence of persons acting on behalf of Defendant, or in the employment of the Defendant, or having such relation to Defendant as to give rise to liability against Defendant for such negligent acts or omissions, or other breaches of duty, care, skill, or diligence, Plaintiff Harris has suffered, was or is suffering, and with reasonable probability may suffer in the future, certain damages, including but not limited to any or all of the following: temporary and/or permanent physical injury as the evidence shall reveal; and/or persistence of a pre-existing condition; and/or the cost of medical and allied expenses for care and treatment rendered, and with reasonable probability to be rendered in the future if future treatment is reasonable and necessary, to Plaintiff Harris; and/or temporary and/or permanent physical pain and suffering; and/or temporary and/or permanent emotional distress and/or mental anguish; and/or temporary employment disability and/or physical impairment; and/or loss of earnings; and/or loss of enjoyment of life; and/or such other general and special damages and losses as are shown by the evidence.

35.

The value of the various and particular special and general damages which Plaintiff Harris has suffered or sustained, and/or is suffering and sustaining, and/or with reasonable probability will in the future suffer and sustain, proximately caused by the tortious and otherwise

Kenneth Harris v. USA/CV  /Plaintiff's Complaint [Redacted]

wrongful conduct of the negligent acts or omissions, or other breaches of duty, care, skill, or diligence of persons acting on behalf of Defendant, or in the employment of Defendant, or having such relation to Defendant as to give rise to liability against Defendant for such negligent acts or omissions, or other breaches of duty, care, skill, or diligence as is described in this Complaint and for which Defendant is liable to Plaintiff Harris, are in such amount as will be shown by the evidence, but which is asserted to be at the sum of $216,863.03 (Two Hundred and Sixteen Thousand, Eight Hundred Sixty-three Dollars and Three Cents), subject to modification upwards or downward as the case may be, of which $200,000 (Two Hundred Thousand Dollars and No Cents) is for general compensatory damages, plus $16,863.03 (Sixteen Thousand Dollars and Three Cents) for special damages (e.g., lost wages, and subrogation reimbursement), or such other sum as is determined just and proper under the circumstances.

36.

WHEREFORE, Plaintiff Harris seeks Judgment against Defendant United States of America as follows:

1. For his special and compensatory damages and allied expenses, in the cumulative amount of $216,863.03, or such other sum as is just and proper under the evidence;

2. For the sum of all allowable costs and disbursements, and prejudgment interest, as is permitted by law; and

3. For such other and further relief as is just and proper under the circumstances.

Kenneth Harris v. USA/CV  /Plaintiff's Complaint [Redacted]

  Dated this   1   day of February, 2022.

               RENSCH LAW OFFICE
               A Professional Law Corporation


                 /s/ Timothy J. Rensch
               Timothy J. Rensch
               Attorneys for Plaintiff
               832 St. Joseph Street
               Rapid City, SD  57701
               (605) 341-1210
               tim@renschlaw.com

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Kenneth D. Harris

## DEFENDANTS
United States of America

**(b)** County of Residence of First Listed Plaintiff: Pennington
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Timothy J. Rensch, Rensch Law Office
832 St. Joseph Street
Rapid City, SD 57701  605-341-1111

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [X] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District (specify)
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1346(b) and §§ 2671-2680

Brief description of cause:
Transmitting incorrect positive cancer result

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $216,863.03

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE: Feb 1, 2022

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____